Case No. 17-6310 East Coast Miner LLC v. Holyfield LLP Oral argument not to exceed 15 minutes per side John Goodchild for the appellant. You may proceed. Good morning, your honors. May it please the court, my name is John Goodchild. I represent four secured lenders in connection with a bankruptcy case. And may I reserve five minutes for rebuttal, please. Thank you. This is a case in which the bankruptcy court interpreted a consent order in a way that eliminated the need to handle a dispute over whether certain property of the bankruptcy estates was subject to a pre-petition lien, on the one hand, versus an adequate protection lien, on the other hand. An adequate protection lien is a kind of lien that is created during the bankruptcy case in order to compensate a secured creditor for the reduction in value of the secured creditor's collateral measured as of the date the case began. That last part is important, your honors. What's happening in this case? There isn't anything in the bankruptcy code itself, is there, that prohibits a secured creditor or lien holder from agreeing to a carve-out payment for Chapter 11 attorney's fees, thereby, in essence, giving attorneys priority over their own interests. There is nothing in the bankruptcy code that prohibits that, your honor. In this case, there was consent, and that consent is embodied in a highly negotiated order. The issue is whether the bankruptcy court correctly interpreted that order in order to make the carve-out subject to the collateral securing pre-petition liens versus the adequate protection ones. And so we have no dispute over whether there could be consent in order to reduce the claim of the secured creditor or the extent to which the lien covers collateral. But at the point of conversion of the case, when the professional's fee applications came before the bankruptcy court, it had been a year since that case had filed. And you can see in the procedural objection, which is Record 9, Exhibit 9, you can see in that objection that there were categories of property that had come into that bankruptcy estate that were not in existence at the time the bankruptcy began. And you can see that the dispute that was being raised was whether those new items of property were pre-petition collateral, which required an examination of the UCC and proceeds and arguments about how collateral can change from its original form into a succeeding form, versus whether that property, those items of property that did not exist at the beginning of the bankruptcy case, whether those things were subject to the new liens, the adequate protection liens. And the reason why that was important from my client's perspective is that the carve-out, the reduction of the lien right under that cash collateral order only applied to the lien asserted over property that was otherwise unencumbered. But you do not, you don't take the position that your final carve-out language could have granted a lien across both of those categories of property, right? I don't dispute that at all. So the question is, what did you do? What does this language mean, right? Well, yes and no, Your Honor. Yes, the question is, what does the language do? But I believe the answer is right in 12E, right in paragraph 12 of the cash collateral order. That paragraph says that the adequate protection lien is senior with respect to unencumbered property, and it is junior with respect to property as to which there was already a lien when the case began. So the issue confronting the bankruptcy court, Your Honor, was given that I have unpaid professional fees, which are a Chapter 11 administrative expense, and given that I have this consent order, do I really have to reach the question of whether the unpaid amount of the professional fees is senior in priority or whether it is a carve-out from a junior lien? That was really the issue presented by the procedural objection. And in our view, the court simply sidestepped that issue. Instead of resolving the issue that is squarely presented in the procedural objection, which was, is all this new bankruptcy estate property subject to my pre-petition lien, or on the other hand, is it subject to my adequate protection lien, which in our view was the question. Instead of reaching that question, the court did something extraordinary in our view. The court simply said, because you agreed to carve out professional fees from your adequate protection lien in paragraph 12, I will not reach the dispute. I will simply hold that that carve-out applies to the collateral, irrespective of whether we're talking about pre-petition collateral or whether we're talking about collateral as to which the adequate protection lien attaches. Wasn't there also discussion in the court's order that looked at the actual record, looked at extrinsic evidence, and found that the right to collect those fees spanned the Chapter 11 to Chapter 7 alteration and that you had already made the promise? Yes, Your Honor. And that your statements to the court supported the fact that you had already made that promise? Yes, Your Honor. The bankruptcy court absolutely did say those things in response, perhaps, to things. The first is that the City of Covington case, even if Your Honor looks at it and says the rule is a little different when we're talking about cash collateral orders because of the Hughes-Bactel case. But the first point is the City of Covington case does not allow for a bankruptcy court to go outside of the four corners of the agreement, plus assuming that the court follows the unpublished decision in the Hughes case, plus some context. Otherwise, considering extraneous evidence in interpreting a cash collateral order would be an error of law. That's number one. Number two, Your Honor, looking specifically at what the bankruptcy court relied upon in making the court's observations, the bankruptcy court, with respect, took generalized statements about a desire for the professionals to be paid and grafted onto that a very specific intent in the face of a really narrow and technical dispute. Over exactly what kind of lien is going to be subordinated to the claim of the professionals? Well, if the language of the agreement itself is either silent or is both silent, if it's silent, there's an ambiguity, a question about what the agreement means. Or if the agreement itself is ambiguous, then doesn't bankruptcy law authorize review beyond the direct language of the statute so that you look at the record? Yes, Your Honor, but here there was no... Why here, am I correct that the final cash collateral order doesn't contain provisions that specifically discuss the carve-out as it pertains to pre-petition cash collateral? Your Honor, as to your first question, yes, if there were a finding of ambiguity, I agree, the bankruptcy court could go beyond... Silence, would you also concede that silence on an issue makes the agreement ambiguous? No, I would not agree with that. That actually is covered in some of the cases that were cited, including City of Covington. I don't think silence amounts to ambiguity. I believe, Your Honor, that ambiguity is when a term in a contract can be interpreted in two plausible ways. Well, if the term is not specified in the contract, then wouldn't the natural course be to look beyond the contract to determine the intent of the parties in the language that exists in the contract? Your Honor, I do agree that it would be natural. In this case, however, Your Honor, there is a very specific set of language in paragraph 12 that says exactly to what the carve-out applies, and it is in the beginning of paragraph 12, Your Honor. It says, solely on account of the adequate protection obligations, the lenders are granted following liens, rights, and benefits. And then in the following subsections, the references to carve-out apply only to those rights created under paragraph 12. There is nothing in paragraph 12 that talks about the lien that existed as of the petition date. Is my memory correct that there is reference to chapter 7 also? Yes, there is, Your Honor. And to the trustee? Yes, absolutely. Well, how can you exclude the entire provision based on your argument if the provision itself addresses the right of chapter 7 entities to be paid? Your Honor, with respect, we are not doing that. What we are saying, Your Honors, is that in a chapter 7, in this chapter 7, the court simply should have followed the order as written. Well, here is my struggle. If it is not specified in the language, as I noted earlier, and the language also includes references to payment for chapter 7 activities, then why would that not be evidence that it would enable the payment for the professional fees in the court that arise for timely payment in the chapter 7 proceedings because the chapter 11 proceedings no longer exist? Your Honor, I agree with you that in this case, in section 12, the references to chapter 7 refer to the adequate protection liens. In other words, the references to chapter 7 are completely consistent with our argument. What we are saying is the payment from the professionals needed to be carved out from the adequate protection security interest, not from the pre-petition security interest. All of the references to chapter 7 are as to the adequate protection liens. And with respect to the only stand-alone section, 20C, in the cash collateral order, that one works in favor of the lenders, Your Honor. It is not a provision that allows the payment of the fees after the chapter 7. For us, the payment of the fees after the chapter 7 simply had to be paid out of a carve-out from the lien on the adequate protection collateral. And that issue, what was pre-petition collateral versus what was adequate protection collateral, that issue was before the bankruptcy court. And we're simply asking for a remand so that the bankruptcy court can make a decision about which collateral was subject to which lien so that the right order of priority, as reflected in the agreement of the parties, can prevail. Are you taking issue with this language from Collier on bankruptcy in which Collier says, And moreover, usually with the lender's consent, cash collateral orders often include a carve-out for payment of professional fees. However, Section 363C.2 is clear. Absent consent or court order, and here in our case we have got court order and consent of the lenders, apparently absent consent or court order, the trustee may not use cash collateral for any purpose, including the payment of administrative expenses. We are not. All we are saying is that the consent here was set forth in a highly negotiated order and that the order should have been enforced as written in order to embody the agreement of the parties so that the bankruptcy court would have had to have reached the issue of which liens attached to which of the collateral that is set forth in that listing of estate property that is in the procedural objection. Thank you. Thank you, Your Honors. Good morning, Your Honors. Jeff Goodman here on behalf of my firm, Fully and Lardner, as well as the other professional firm appellees in this case, and I will be speaking on behalf of all those appellees, including my firm. This court should affirm the district court because the bankruptcy court did not err in interpreting its own cash collateral order, and obviously the order, as Mr. Goodchild was referring to, is the final cash collateral order, which includes a professional fee carve-out. I want to kind of make sure I get to where we are now in terms of the briefing. In their reply brief, the appellants agree that the carve-out does apply in Chapter 7. In page 7, they say, let there be no doubt. East Coast Minor agrees that the carve-out does not terminate upon conversion to Chapter 7. We raised it in our brief. Paragraph 20C of the cash collateral order makes it clear that if it applies in Chapter 11, it applies in Chapter 7. So nothing evaporates. So the only issue before this court with that concession is that does the cash collateral order extend to the pre-petition collateral of the Licking River lenders? And it unequivocally does. Before I get to that, I want to mention it's important, there's reference to different types of liens. When you have a secured lender in a bankruptcy, the secured lender asserted a lien on everything, all assets, everything was covered. There's a so-called adequate protection lien you can get in a bankruptcy, which says if there's diminution in value of your collateral, you can get a lien on something else that you didn't have a lien on. In this case, when you assert a lien on everything, there's nothing that doesn't have a lien. There's nothing a lien is not being asserted. In theory, there could in theory be something, perhaps it comes out of the sky. But an adequate protection lien, it's important to know the scope of that lien. This adequate protection lien, which is what the appellants say is the only thing carved out of the professional fees, is a lien when you assert a blanket lien means it attaches to either nothing or virtually nothing. And the bankruptcy court addressed that in its opinion to say it would be absurd to say there's a highly negotiated carve-out that allows for payment of cash to professionals, but the only carve-out is from an adequate protection lien, which may not even exist. There may be nothing there, because when there's a blanket lien asserted, there's nothing to which the adequate protection lien attaches. So professional fee – The bankruptcy court assumed you would not negotiate that type of provision. That's right, Your Honor. And obviously, when you have a blanket lien, professionals in a Chapter 11 are under substantial risk of not being paid. That's why you have a carve-out to begin with. It's when a secured creditor allows their liens to be carved out or subject to professional fee claims that are paid from cash, again, cash, that otherwise would be subject to their liens. Without a carve-out, there are no professionals to work on the case in many cases, because in many cases you have secured creditors who assert these types of blanket liens. That's the only way you can have a bankruptcy go forward. That's right, Your Honor. And it's also important as well, once there's a carve-out, it's not even cash collateral anymore. And we cited cases, and they didn't cite anything to the contrary in their reply brief, the U.S. Flow case, the nuclear imaging case, they're not binding on this court, but they're the only authority here that once something's carved out of liens, it's not even property of the estate anymore. It's not property of the bankruptcy estate. It's essentially held in a box, not literally, but figuratively, for purposes of the professional fee creditors. Now, I want to go to the text of the final cash collateral order here. 12E, and there's a few important points. Paragraph 12E contains the language for carve-out. There's nothing in 12E that says it's only a carve-out from the adequate protection liens. There's nothing that says that. That's the preliminary language in 12. Right, but it doesn't say – Adequate protection claims and liens. Right, that's right. That's what paragraph 12 is about. It is. And the opposing counsel says that does it. That's right. We've got the intro to the section, and that governs what happens. Why is that not correct? That's not correct, Your Honor, because that's talking about what the secured creditor gets. 12E, could 12E, I mean, I suppose if paragraph 12E was in paragraph 14, we wouldn't even be here today. 12E is not something – that intro paragraph is about the claims they get, the possible rights they may have based on diminution of their collateral. 12E, which happens to be the definition of carve-out, doesn't speak to anything they get. That's something that the appellees get in 12E. They're not getting anything from 12E. 12E is what they're giving. And 12E, it's important. 12E, in terms of does it extend to the pre-petition collateral. 12E, the definition of carve-out, and the bankruptcy court and district court both relied on this, includes a $150,000 investigation budget for the creditors' committee paid from cash collateral. That's in 12E. It's in the definition of the carve-out. It's actually on page 20 of the order towards the end of 12E. It's in the provided, however. An amount equal to the investigation budget, as defined herein, may be utilized by the creditors' committee solely to investigate liens, claims, and cause of action, adversary proceedings against the Licking River lenders. That's the appellants. That's also in paragraph 10, the use of cash collateral. $150,000 investigation budget. You can't pay – that's payable from cash collateral. You aren't paying that from an adequate protection lien. You're paying it in the use of cash collateral in paragraph 10. It's part of the carve-out in paragraph 12E. That alone shows that the carve-out extends the pre-petition cash collateral, or else you couldn't pay the budget. You simply could not. Another important point I think Your Honors were going to, the fees – the definition of carve-out isn't just the fees allowed at any time for purposes of the FLEs. It includes the fees payable to the office of the United States trustee. That's the arm of the Department of Justice. Under the Bankruptcy Code, it's absolutely required that those fees be paid, or else the case is dismissed. It's a statutory requirement. To take appellants' argument, you would have to accept the fact that the office of the United States trustee was a substantial risk of nonpayment if that wasn't payable from cash collateral. In addition, there's $25,000 of fees payable to the Chapter 7 trustee. Again, cash payments. Well, cash can only be paid from cash. Throughout the case, this was clear both in the text of 12E and other points we'll get to, that this was a standard professional fee carve-out. I'll also mention the liquidators receive substantial benefits under this final cash collateral order. This isn't just we give a carve-out and we let you use cash. They receive waivers of claims. They receive stipulations, rights to exercise upon their collateral upon certain events, a number of important provisions that they bargained for and argued for in front of the court. So not only is 12E, and again, I think the investigation budget alone is enough, but the record as a whole is important to show that it extends to the prepetition collateral of the Licking River Lenders. And the court was well within its rights to do so. We cited multiple cases in which this isn't, I mean, I know Your Honor used the term extrinsic evidence, but technically it's not extrinsic evidence. The record as a whole is something they can take judicial notice of. The Hughes-Bechtel case, the St. Louis Bacchus case of this court, we also cited other bankruptcy cases, again, not binding on this court, in which in a bankruptcy proceeding where there are multiple orders, the court has authority to look at those to determine additional check on the interpretation of a court order. Again, as the Hughes-Bechtel case said, a compromise forged on the obstacles of the court. I will mention one thing before I get to the record. Appellant's counsel mentioned using the term consent order and suggests in their briefing that perhaps there's not, as part of that, that there's not deference to the bankruptcy court, that this court shouldn't give deference, it should be a de novo standard in terms of the interpretation of the cash collateral order. That's not the law here. The Dow Corning case, the Conco case, those are both decisions of this court applying, interpreting a Chapter 11 plan and related order. In bankruptcy, orders are drafted by the court. They're reviewed by the judge, the bankruptcy judge. The bankruptcy judge makes changes. The parties come together. There's no standard on which this court tries to, you know, put its finger to its mouth and determine, well, how much did the court draft that order? Was it 50 percent or 25 percent or 75 percent? There's no law. They haven't cited an A. When you're talking about a Dow Corning, Conco, those are plan cases, similar in which the documents are drafted by the parties and the court then comments on it. And in those cases, this court said there was substantial deference to the bankruptcy court's decision, and that's the standard here. It's not as referenced in the brief and alluded to being a consent order somehow reviewed de novo. But even if it were de novo, we would prevail. Well, Hughes-Bechtel says that. It says there's this de novo standard. Then it steps right on and looks at the party's intent in the context of the bankruptcy proceeding. And there's talk of this being contract interpretation. So give me your eagle's eye view of what that means in a bankruptcy proceedings. Educate us, because I'm struggling with whether we treat this as if it's a contract and then we say, let's look at the language first, clear on its face, we're done. The language is not clear on its face. Now we look at extrinsic evidence. Or do you think that in the circumstances of bankruptcy, there's a little different procedure where the court, having been involved both in oversight of separately, then considers that part of the entire body of each written document? And what is your best case for saying that there's this slightly distinguishable way of addressing the problem? Thank you, Your Honor. Yes, I think there is. I think you look at the language and you look at the record as a whole. I think that when you're talking about it, the best case ñ when you're talking bankruptcy, there's going to be multiple orders, and I want to get to them, make sure I get to the ZIP order, because it's really important here. But there are multiple orders in a case that are ultimately touched on the issue. So you look at the language, but you also, if a bankruptcy judge who is familiar with the entire proceeding, they are entitled to look at the record as a whole, because other things are going to touch the interpretation. Particularly here, you've got a cash collateral order, we'll get to the ZIP order. There will be multiple orders that touch the issue, so you're going to look at that. And I think the best case for that, and it's not a cash collateral case, I think Dow Corning and Conco are the best cases for that, because you're talking about a situation where the lead-up to the negotiation of a plan and the terms of the plan itself. If the language, by reading, would appear to be completely clear, does the court then still stand back and look at that order in the context of the other orders in the bankruptcy? I think sometimes you would not, but if it's dispositive, which I think in this case it is, you would still look at it as well. I mean, I think you would look at admissions of the parties, you would look at the order. And I want to get to the issue here in terms of why that's important. By the way, I think that the language is clear in our favor based on the investigation budget. It's clear that's payable from cash collateral. That's pre-petition collateral. You get to the ZIP order in this case. Cash collateral means in a bankruptcy that you can use cash. The debtor can use cash. No borrowing at that point. You can use the cash in which the secured lender asserts the lien. A debtor in possession financing is where a party makes a loan, a post-bankruptcy loan, to allow the debtor to operate. So this case started with just the use of cash, the cash collateral asserted by the appellants. But at some point in the case, the debtors needed borrowing. And they got it from a company called Porter Capital. And Porter Capital made loans secured by accounts receivable and the proceeds thereof. This is pre-petition collateral. Now, including cash collateral, because the proceeds of accounts receivable are, of course, cash collateral. And I know there's a lot in the briefing, and I want to make sure I focus on it. These debtor in possession financing orders, here is the order of priority. They said, Porter, the new lender, not surprisingly, says, our liens are senior to your liens, Licking River Lenders, the appellants. But Porter says, our liens are junior to the carve-out, subject to the carve-out. And the bankruptcy court found that dispositive, and it is dispositive, Your Honor. If Porter is junior to the appellees, the professional firms for the carve-out, on accounts receivable and the proceeds thereof, pre-petition collateral and cash, and senior to the liens of the Licking River Lenders, by definition, those assets are subject to the carve-out. It cannot be otherwise. This is not an adequate protection lien. This is cash. This is pre-petition collateral. The dip lender alone provides that we're in the senior position. So I think the court was also right to look at other parts of the record. Because a carve-out, professional fee for carve-outs are in every case, oh, not every case, in very, very many Chapter 11 cases. And there's usually no dispute that the carve-out means a carve-out from pre-petition collateral. This just simply doesn't come up. But it came up here. So the court said, well, I'm going to look at the record and see were there statements, were there other representations that inform what was supposed to be going on here. And I think the most striking one is the own words of the Licking River Lenders. When they were seeking the right to credit bid, they were saying all the great things they did in the case, which would allow them to have the right to submit a credit bid on the assets. And they made a statement in that reference saying, pursuant to the final cash collateral order, the Licking River Lenders consented to the debtors' use of their collateral to fund the costs and expenses of administering the Chapter 11 cases, including, without limitation, a carve-out for the fees of the professional firms retained by the debtors' loan committee. Their collateral, not adequate protection liens, not anything else. And this Court's decision, there are many, we said it in our brief, those judicial admissions are binding on the Licking River Lenders. And the bankruptcy court who presided on them said that was an unequivocal admission that a loan would be enough. How much money are we talking about in this case? Your Honor, I think the fees paid pursuant to this last payment, which they were challenging, was $2.4 million to a variety of firms, professional firms, the appellees, seven or eight firms in total. Does that admission have to be a judicial admission? Is it, does this fit within the rubric of an admission against interest, so to speak? Or, I mean, how do you, do you give it a label? We use the term judicial admission, Your Honor. That's the label that was used in the case law. Affegosley, I may be butchering the pronunciation of that name. It's a judicial admission that's binding them. A statement to the Court, including a statement from counsel, is binding on the parties in this circuit. Does somebody have any further questions, Your Honors? No. Thank you. What I'm thinking of may be something that your opposing counsel has already referenced, but I remembered that there was in the record a time in which your client agreed to pay professional fees in the context of saying that we want these professionals to continue to work so that they can value the assets and arrange them for sale. Is that not also in the record? Yes, Your Honor. There is something there. And what could they have meant if you weren't standing there telling the Court, we need their services, we will benefit from their services, and so we're going to pay them? Your Honor? I don't see how this could have gone forward, or would have gone forward if they couldn't collect their fees. You know, you agreed to all these things, and then when they seek the fees that they agreed to in order to go forward, you're saying they're not entitled to them. Your Honor, I'd like to answer. I misunderstand the case. I'd like to answer both questions. Thank you. Yes, begin. Judge Merritt, paragraph 10 of the cash collateral order is where my clients, the lenders, allowed for the professionals to be paid. Respectfully, it's not correct that the lenders simply went along through the case, wanted the professionals to work, and then turned around and pulled the rug out. It looks like on the surface. I do appreciate that, Your Honor, because we focused on what happened after the case converted to Chapter 7, but that's probably my fault. I should remind the Court, during the entirety of the Chapter 11 case, there was a budget. The professionals were paid. The budget had line items for the professionals, and in fact, and this goes to your point, Judge Tranch, right before the conversion of the case, there were two times in which that budget was expanded to make it so that the professionals could be paid here. So we're not talking about a situation in which my client is taking the position the professionals should receive no payment. We're talking about a situation in which after the case converts to Chapter 7 and the professionals are asking for money, some of which exceeds those budgets, whether we get to skip over the question that is set forth in the cash collateral order, which is do the professional fees, are they superior in all respects to every lien that the lenders assert, whether it's a pre-petition lien or an adequate protection lien, or do we follow the text of the order, which is that the carve-out is from the adequate protection lien. That's what Paragraph 12 says. And respectfully, the bankruptcy court simply skipped over the question and assumed that the cash collateral order and the agreement in which it is set forth allowed for a carve-out from the pre-petition lien rather than a carve-out from the adequate protection lien, and it's that highly negotiated ---- Do you have cases in which this very issue has been litigated? No. But, Your Honor, it's interesting that the other side ---- Is that because, in general, it's the assumption that professional fees will be paid off the top along with trustee fees and court fees in order to assure that entities in bankruptcies can actually acquire legal representation? If it's not been litigated before, is it because everyone before has assumed that the language of these carve-outs mean that attorneys who work $2.4 million worth of time get paid for it? Your Honor, that's certainly possible, but looking at the case law, I think the more plausible explanation is that every single one of these cash collateral orders is highly negotiated and they're all different. Is the carve-out very distinct? My understanding ---- Well, I know it lists the dollar figures and the particular pot, so to speak, in this case, but my understanding in reading was that the carve-out was a fairly standard provision and tracked fairly standard language. Is that inaccurate? And if it is, tell me what about your carve-out draws that distinction? It is inaccurate, Your Honor, and I say that with respect. If you look at the cases that were cited about cash collateral orders, they're all vastly different. They all provide for a kind of carve-out, a way for professionals to be paid under certain circumstances. But look at nuclear imaging. In nuclear imaging, the carve-out was pursuant to a budget, and the budget exempted the professional fees from the collateral. In the Pennsylvania case ---- But here, your contract doesn't exempt them, right? It just ---- Your argument earlier was that it limited them, that this is beyond budget, right? Not that they weren't provided for. Some of the professional fees in question here are beyond budget. That's true. What I'm saying is the carve-out applies to a particular kind of lien because all of these cash collateral orders are different. So to your point, Your Honor, it's not that the idea of a carve-out is something that's bespoke. That's not true. The idea of providing for professional fees is something that's in the law, it's in the cases. It is fairly standard, Your Honor. But the precision of it, how they are carved out, the legal mechanism for the carve-out, what collateral is subject to it, how do you exempt from the carve-out, all of those are highly negotiated. It's all negotiable. Yes, Your Honor. So what does your language before the court mean when you said, we are willing to engage in this agreement and continue because we need the professional services in order to muster the assets and figure out how to sell them. We need their professional assistance. What does that mean if it doesn't mean that you will then be paid? It means that we consented to the use of cash collateral for the fees and expenses associated with selling the assets. That's true, Your Honor. But that's not what's before the court today. What's before the court today is what happened after. Well, have all of those fees then actually been paid already? Yes, Your Honor. So all of the fees that your opposing counsel earned for doing the work that you told the court you wanted them to do, your representation is that they have been paid all of those fees. Yes, with a but, Your Honor. Yes, they have been paid. But some of those fees are caught up within this appeal. That's what this case is about, isn't it? These fees. In substance, Your Honor. You don't want to pay them, right? Your Honor, where we are is we would like for the bankruptcy court to decide which of the bankruptcy estate's assets are subject to the pre-petition liens versus the adequate. But that resolves the issue. And it resolves the issue in most bankruptcy cases, doesn't it? I mean, where you have the kind of overarching liens that the main lender has, when do you not ever take a lien on everything? I mean, you're not dumb. You lien on everything you can because you're in bankruptcy because they can't afford to pay their debts. So under your argument, there will be nothing left to pay them. Isn't that accurate? No, Your Honor. It's not accurate. Because this bankruptcy is highly contentious, there are lots of causes of action out there. We are not fully administered in the Chapter 7. What we're saying is the bankruptcy court shouldn't have short-circuited the process of letting the case play out and having the professionals be subject to payment out of assets that they were entitled to. And instead of that, the bankruptcy court simply allowed the professionals to basically take money out of the estate before all of the dust settled and everyone took their chairs. And if the dust settles and there are other causes of action collecting from other people that owe this debtor, then won't that then accrue to the lender's benefit because it will replenish the pot of the estate in order to have the lender paid? No, Your Honor. It won't. And that's because under the highly negotiated terms of the cash collateral order, the causes of action are exempted. Your Honor, what we're talking about... Wait, then where will they go? It would become property of the Chapter 7 estate. My clients wouldn't have a lien on them. That's the issue, Your Honor, right there. It's that now looking back over the last three years, our view is the professionals should have been Chapter 11 administrative expenses just like every other Chapter 11 admin expense, and they should have waited pursuant to the terms of this order until there was adequate property to pay them. And all we're complaining about is that the Bankruptcy Court short-circuited that entirely and said, I'm going to interpret this order to allow you to be paid from property as to which there's a lien without resolving whether the lien in question is a pre-petition lien or an adequate protection lien. The issue, Your Honor, with respect is not whether we assert a lien over everything. It's actually two issues, Your Honor. First is, as to that, we don't assert a lien over everything. We agreed that there are certain things that are going to happen in this bankruptcy, including litigation claims over which we don't have a lien, number one. And number two, there was a negotiated order that set forth the circumstances under which professional fees were carved out of a lien. And the kind of lien matters. So unlike... All right. So your core is that we have an overarching lien on all the lended materials, and if professionals want to be paid, then they fall into the risk pool of whether there will actually be any other fee, found, pursued, and obtained for the estate. Close, Your Honor, with respect. When you say risk pool, there are different kinds of risk, and here the professionals negotiated for less risk than a typical Chapter 11 administrative creditor because they actually do have a carve-out from an adequate protection lien. It would be a miscarriage of interpreting the order, however, to say that they also have a carve-out over a lien on pre-petition collateral, a pre-petition lien. And so they improved their position a little, but not so far as to eliminate the issue that was really presented to the bankruptcy court, which was whether all this new property that had come into the Chapter 7, whether all that new property, whether that was really pre-petition collateral because of the UCC rules or whether it was new property as to which the lenders might assert an adequate protection lien, but they didn't have a pre-petition lien. And in our view, that is the crucial difference because of the language of Paragraph 12 of the Cash Collateral Order. Further questions? No, I just don't understand whether I'm competent to decide this case. These bankruptcy cases are so complex, and we don't deal with them very frequently. So it's like trying to put together something that you don't know anything about. I understand your argument. It's very difficult for Article III judges at the court of appeals level to understand all this about bankruptcy, but we'll do our best. I do appreciate it. You know, the nuclear imaging case, which is cited by the trustee and the professionals, it gives a good example of how each one of these cases is different. You'll see, Your Honors, that in that case, the professionals agreed that the carve-out only covered a little bit of what they were seeking, that the carve-out was limited and it was a carve-out from the collateral, and then there was a whole bunch of other fees out there. And that's your best case for saying that you are not raising an entirely new argument, that that is the case law that governs the type of argument that you've made? Well, Your Honor, I think it's kind of a yes or no. Either it's your best case or it's not. If you've got a better one, tell me. On the issue that Your Honor has raised, I think the best authority for it is that in the procedural objection, we raised explicitly that the case had converted to Chapter 7 and that the cash collateral order should be interpreted on its terms. With respect to the waiver argument, I think that's the best. On the point of, does a carve-out mean the same thing in every bankruptcy case and doesn't that somehow dispose of this? The best thing to do is to look at the three cases that have been cited by the parties about how cash collateral orders work and just note how different they are. And that's the nuclear imaging case, it's that Pennsylvania case out there. I think the key is the conceptual purpose of that type of carve-out. Of course, it's distinct from time to time, but I assume you would not doubt that the conceptual purpose of the carve-out is to assure the payment of professional fees. And it did. And this order does do that. The question is, how far does it go? Thank you. Thank you, Your Honor.